**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| SOLENIS TECHNOLOGIES, L.P., SOLENIS SWITZERLAND GMBH, and SOLENIS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 2:23-cv-02413-JPM-tmp JURY TRIAL DEMANDED |
| BUCKMAN LABORATORIES, INC., BUCKMAN LABORATORIES INTERNATIONAL, INC., and BULAB HOLDINGS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING MOTION TO DISMISS**

Before the Court is Defendants Bulab Holdings, Inc. ("Bulab's"), Buckman Laboratories, Inc., and Buckman Laboratories International, Inc.'s (collectively, "Defendants'" or "Buckman's") Motion to Dismiss and accompanying Memorandum, filed on November 6, 2023. (ECF No. 25.) Plaintiffs Solenis Technologies, L.P., Solenis Switzerland GmbH, and Solenis LLC (collectively, "Plaintiffs" or "Solenis") filed a Response in Opposition on December 4, 2023. (ECF No. 32.) Defendants filed a Reply in Support of their Motion to Dismiss on December 18, 2023. (ECF No. 33.)

For the reasons discussed below, Defendants' Motion is **GRANTED**.

## I.      BACKGROUND

### A.      Factual Background

Solenis Technologies, L.P. is a Delaware limited partnership that owns U.S. Patent No. 7,785,676 ("the '676 Patent"), U.S. Patent No. 8,222,343 ("the '343 Patent"), and U.S. Patent No. 8,703,847 ("the '847 Patent") (collectively, the "Asserted Patents"). (ECF No. 1 at ¶ 2.) Solenis Technologies, L.P. granted an exclusive license of the Asserted Patents to Solenis Switzerland GmbH, a Swiss corporation, which then granted an exclusive license to Solenis LLC, a Delaware limited liability company. (Id. at ¶¶ 3-4.) The Complaint alleges that Buckman Laboratories, Inc. and Buckman Laboratories International, Inc. are both subsidiaries of Bulab. (Id. at ¶ 8.) All three Defendants are Tennessee corporations based in Memphis, Tennessee. (Id. at ¶¶ 5-7.)

The Asserted Patents are all titled "Glyoxalation of Vinylamide Polymer." (Id. at ¶¶ 14-16.) The '676 Patent claims methods for preparing cellulose-reactive functionalized polyvinylamide adducts to, *inter alia*, improve strengthening agents for paper and paperboard. (Id. at ¶ 20.) Vinylamide polymers, including a class which is modified with gyoxal or cellulose reactive agents to be thermosetting, are often used as paper strengthening agents. (ECF No. 1-4 at PageID 52.) Prior methods of generating thermosetting vinylamide polymer produced a water-soluble gel over time, led to high concentrations of volatile organic compounds that restricted the product's use, produced adducts with a limited shelf-life, and left about half the original glyoxal unused. (Id.). Claim 1 of the '676 Patent claims a method that both reduces these side effects and improves the strengthening effect on paper products. (Id. at PageID 52, 60.)

Claim 1 of the '343 Patent claims a "paper or board comprising a cellulose reactive functionalized polyvinylamide adduct" where the adduct is prepared by a process akin to that in the '676 Patent. (ECF No. 1-3 at PageID 49.) Claim 12 claims a method for increasing the wet or dry strength thereof by adding the adduct to "an aqueous slurry of cellulosic fibers" or "spraying, coating or applying" the adduct onto a wet web, paper, or board. (Id. at PageID 49-50.)

2

Claims 1 and 2 of the '847 Patent claim methods for preparing an adduct similar to those in the other Asserted Patents, but with specific ranges for either the molecular weight of the vinylamide polymer or the molar ratio of amide to cellulose reactive agent.  (ECF No. 1-2 at PageID 38.)  Claims 8-18 claim variations of a "glyoxalated-polyvinylamide thermosetting polymer composition[.]"  (ECF No. 1-2 at PageID 38-39.)

Solenis commercializes and exploits technology for generating gyloxalated polyacrylamide ("GPAM"), including under the Hercobond® brand.  (ECF No. 1 at ¶ 21.)  The Complaint alleges that Buckman makes, markets, and sells GPAM products and GPAM-generating services, including under the Bubond® brand, in part through technologies claimed in the Asserted Patents.  (Id. at ¶ 22.)  The Complaint alleges Buckman's GPAM-generating equipment directly infringes the Asserted Patents and was tested in a way that also infringes the Asserted Patents.  (Id. at ¶23.)

On May 13, 2022, Solenis sent Buckman a letter regarding its on-site GPAM generation in Reading, PA, using equipment based on technology obtained from Applied Chemicals International Group AG ("ACAT").  (ECF No. 25-2 at PageID 144.)[1]  Solenis asserted that on-site GPAM generation with ACAT technology could not be viably produced without infringement of at least one of four patents (collectively the "Hercobond® Patents"), three of which are the Asserted Patents.  (Id.)[2]  It asked Buckman to provide assurances that it would abate any infringing activity.  (Id. at PageID 145.)

On November 4, 2022, Solenis warned Buckman that if it did not agree to refrain from unauthorized use of the Hercobond® Patents by November 17, 2022, Solenis would assume that

---

[1] The discussed letters are referenced by the Complaint but not attached to it.  (ECF No. 1 at ¶¶ 24-30.)  Buckman instead submits these letters in support of this motion.  See infra III.A.

[2] This letter identifies the fourth Hercobond® Patent as U.S. Patent No. 9,644,320.  (ECF No. 25-2 at PageID 144.)

meant Buckman could not or would not do so.   (ECF No. 25-8 at PageID 162.)  The letter also said Solenis' "President Americas" would send a separate copy to Buckman's CEO.  (Id.)  The Complaint asserts that this letter also asked for information concerning Buckman's on-site GPAM generation.  (ECF No. 1 at ¶ 27).

On November 23, 2022, Buckman requested more information so it could review Solenis' allegations.  (ECF No. 25-3 at PageID 147.)  It asked for clarification on a limitation the Asserted Patents share, where an adduct has a maximum viscosity "measured using a BROOKFIELD viscometer at a speed of 60 rpm and a temperature of 25 degrees C[.]" (Id.; ECF No. 1 at ¶ 28.)  Buckman did not mention on-site GPAM generation activities.  (ECF No. 1 at ¶ 28.)

On April 24, 2023, counsel for Solenis replied that it believed the Asserted Patents were "likely to be highly relevant to processes that Buckman" made, used, offered to sell, or sold in the United States.  (ECF No. 1 at ¶ 29; ECF No. 25-4 at PageID 149.)  The letter also stated that the nature of the Asserted Patents' claims and of Buckman's activities made it impossible for Solenis to determine if such activities fell within the scope of those claims.  (ECF No. 25-4 at PageID 149.)  The letter again asked Buckman for information about its processes to the extent necessary to make such a determination by May 15, 2023.  (Id.)

On May 15, 2023, Buckman asked Solenis to respond to the questions posed on November 23, 2022, so Buckman could conclude its due diligence and move forward with this matter.  (ECF No. 25-5 at PageID 152-3.)  The Complaint asserts that to date, Buckman failed to provide relevant information in response to the April 2023 request, and remained unresponsive until the Complaint was filed.  (ECF No. 1 at ¶¶ 30-31.)

## B.   Procedural Background

4

Solenis filed its Complaint on July 7, 2023.  (ECF No. 1.)  The Complaint asserts that Buckman's GPAM generation activities at third-party facilities infringe the Asserted Patents, but acknowledges that Solenis "is unaware of any analytical technique or means to ascertain conclusively whether Buckman's GPAM generation activities, processes, or resulting products infringe any claim of the Asserted Patents."  (Id. at ¶¶ 32-33.)  Solenis seeks to use the judicial process to obtain the necessary information to confirm the infringement.  (Id. at ¶ 34.)

The Complaint also alleges direct infringement of Claims 1 and 8 of the '847 Patent (Id. at ¶¶ 37-38); induced infringement of the same by providing equipment for GPAM generation and encouraging third parties to use it in an infringing manner (Id. at ¶¶ 47-49); direct infringement of Claim 1 of the '343 Patent (Id. at ¶ 60); contributory and induced infringement of Claims 1 and 12 of the '343 Patent by providing and operating GPAM generating equipment at third-party facilities in an infringing manner, and encouraging third parties to so use the equipment (Id. at ¶¶ 69-71, 84-86); direct infringement of Claim 1 of the '676 Patent (Id. at ¶¶ 97-98); and induced infringement thereof by providing equipment for GPAM generation and encouraging third parties to use it in an infringing manner (Id. at ¶¶ 107-108.)  Throughout all causes of action, the Complaint alleges the infringement was willful and merits enhanced damages.  (Id. at ¶¶ 45, 57, 67, 82, 95, 105, 116.)

This cause is now before the Court on Defendants' fully briefed Motion to Dismiss.  (ECF No. 25.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged

in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss "only tests only whether the plaintiff has pleaded a cognizable claim" and "allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery." Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555).  A complainant must plead facts sufficient to show that a claim has "substantive plausibility."  Id. at 347.  That plausibility must be found on the face of the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.    ANALYSIS

Buckman argues that Solenis' Complaint engages in "shotgun pleading", fails to identify a single accused product, and does not distinguish any accused products from prior art in relation to the Asserted Patents.  (ECF Nos. 25 at PageID 127-129.)  Buckman asserts that, in its claims for direct infringement, Solenis fails to plead that any one entity performed all the steps in a method or product-by-process claim.  (Id. at PageID 139.)  Buckman also argues that the Complaint fails to sufficiently plead indirect infringement where it has insufficiently pleaded the underlying direct infringement, the knowing inducement of infringing activity, or the necessary elements of contributory infringement.  (Id. at PageID 131-132, 135, 137.)  Finally, Buckman argues that the Complaint fails to sufficiently plead the willful infringement required for enhanced damages.  (Id.

at PageID 140.)

### A.    Preliminary Issues

If matters outside the pleadings are presented to and not excluded by the court via a motion under FED. R. CIV. P. 12(b)(6), the motion must instead be treated as a motion for summary judgment.  FED. R. CIV. P. 12(d).  A court may, however, consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment.  Rondigo, LLC v. Township of Richmond, 641 F.3d 673, 681 (6th Cir. 2011) (quoting Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (change in original)).

Buckman submits copies of the communications between Solenis and Buckman that were detailed in the Complaint.  (ECF No. 1 at ¶¶ 24-31; ECF Nos. 25-2, 25-3, 25-4, 25-5, 25-8.)  The last letter referenced in the Complaint is dated May 15, 2023.  (ECF No. 1 ¶ 30.)  Buckman also submits emails dated after the letter and the trademark registration for Bubond®, which Buckman argues is a public record.  (ECF Nos. 25-6, 25-7. 25-1 at PageID 129 n.3.)

Solenis does not object to the Courts' consideration of these attachments.  Solenis submits as an exhibit an image of the "Contact Us" page of Buckman's website, which indicates that the Defendants share an international headquarters and contact information.  (ECF No. 32 at PageID 278; ECF No. 32-1.)

The letters referenced in the Complaint and the public trademark registration information for Bubond® can be considered in ruling on the Motion to Dismiss without converting it to a Motion for Summary Judgment.  (ECF Nos. 25-2, 25-3, 25-4, 25-5, 25-7, 25-8.)  The Complaint details the parties' letters up to May 15, 2023, which are central to the argument that "Buckman

has failed to provide any materials relevant" to the alleged infringement, and that Solenis cannot otherwise obtain such information. (ECF No. 1 at ¶¶ 31-32.)

Subsequent emails are also relevant to whether Buckman resisted Solenis' efforts to obtain information about the relevant infringement. (ECF No. 1 at ¶¶ 31, 34; ECF No. 25-6; ECF No. 32 at PageID 286.) However, the Complaint does not refer to these emails aside from saying that "[a]s of the filing date, Buckman has failed to provide any [relevant] materials." (ECF No. 1 at ¶ 31.) Accordingly, they are excluded from the Court's consideration.

Solenis does not explain why it attaches a page from Buckman's website, and the Complaint does not reference the page. (ECF No. 32-1.) The Complaint alleges that Bulab wholly owns the other Defendants, but it never references this page. (ECF No. 1 at ¶ 8.) The website is not public record, attached to the Complaint, or part of the record of the case prior to Solenis' opposition. It is therefore excluded.

### B. Direct Infringement

#### i. *Failure to Identify Infringing Products*

The Complaint states that Buckman makes and sells "GPAM products and services for generating GPAM, including under its Bubond® brand." (ECF No. 1 at ¶ 22.) Buckman nevertheless argues that Solenis' Complaint should be dismissed because it fails to identify which of its products infringe the Asserted Patents. (ECF No. 25-1 at PageID 128-9 (citing Golden v. Qualcomm Inc., No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023))); (ECF No. 25-1 at PageID 128-9.)

Solenis argues the Complaint gives fair notice of alleged infringement by citing Buckman's products and services relating to on-site GPAM generation at third-party facilities, including but not limited to those under the Bubond® brand. (ECF No. 1 at ¶¶ 22, 33; ECF No. 32 at PageID

279-280.)  Solenis also asserts that notice was given through its letters to Buckman advising that the Asserted Patents encompass such on-site GPAM generation.  (ECF No. 1 at ¶¶ 24, 26-29; ECF No. 32 at PageID 280-281.)  The first letter specifically discussed onsite GPAM generation in Reading, PA, and argued that such production was impossible without infringing at least one Hercobond® Patent.  (ECF No. 25-2 at PageID 144; ECF No. 32 at PageID 285.)

Solenis further argues that the generation of GPAM "on-site," like at a paper mill or other customer site, is what distinguishes the Asserted Patents from the prior art and defines the infringing activity identified in the Complaint.  (ECF No. 32 at PageID 283-4.)  Solenis also argues that Buckman's activities are not "so varied and voluminous" that it cannot identify the accused products without more specific pleadings.  (ECF No. 32 at PageID 280.)

Buckman replies that the Complaint is inconsistent as to the scope of the general category of infringing conduct.  (ECF No. 33 at PageID 307.)  While some paragraphs refer to "on-site" GPAM generation as Solenis says, others refer to GPAM generation as a whole or to GPAM generation at "third-party facilities."  (Id.; ECF No. 1 at ¶¶ 1, 22, 31-32, 47, 59, 69, 75-76, 89, 97, 107, 110.)  Buckman asserts that "third-party facilities" is inherently broader than the "on-site" generation that Solenis argues the Complaint targets.  (ECF No. 33 at PageID 307.)  Buckman argues that Solenis' opposition further obfuscated the identity of infringing products by arguing that the Complaint encompasses some Bubond® products and other non-Bubond® products.  (Id. at PageID 308.)  Regarding the May 2022 letter, Buckman argues that the Complaint itself does not reference the alleged infringement at Reading, PA or limit its claims to that activity.  (Id.)

Buckman concludes that to require it to assert that its GPAM generation activities are so varied as to require more specific pleadings, as Solenis asserts, improperly places the burden on

Buckman. (Id.) The motion to dismiss is based on the allegations in the Complaint, which fail to "adequately explain *how* …[Buckman's] activities infringe even an exemplar claim." (Id.)

A plaintiff need not plead infringement on an element-by-element basis in its complaint. Bot M8 LLC v. Sony Corporation of America, 4 F.4th 1342, 1352 (Fed. Cir. 2021). It cannot, however, merely recite claim elements and conclude the accused product has those elements. Id. at 1353; see also DIFF Scale Operation Research, LLC v. MaxLinear, Inc., No. CV 19-2109-LPS-CJB, 2020 WL 2220031, at *2 (D. Del. May 7, 2020) (holding that "line-for-line recitation[s] from the asserted patent claim" and allegations "[o]n information and belief" that the defendant's products meet these elements were insufficient to state a claim). A complaint must support the grounds for the alleged entitlement to relief with sufficient factual content to articulate why it is plausible that the accused product infringes the patent claim. Id. The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device. Id. A complaint gives fair notice of the alleged infringement when it (1) identifies an accused product or process, (2) identifies the patents it allegedly infringed, and (3) alleges that the accused product or process meets every element of at least one claim of the asserted patents, literally or equivalently. Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018).

Here, the Complaint targets on-site GPAM generation as the infringing product. The Complaint is consistent insofar as GPAM generation at "third-party facilities" is "on-site" generation from the perspective of Buckman's clients. (ECF No. 1 at ¶¶ 1, 22, 31-32, 47, 59, 69, 75-76, 89, 97, 107, 110.) Solenis, however, does not limit their claims to a more specific subset,

such as Bubond® brand products.  (ECF No. 32 at PageID 283.)  The question is therefore whether

such a broad description of accused products is sufficient to adequately plead infringement.

     The nature of an infringing device is one of the factors used to determine the sufficiency

of the pleadings.  Bot M8, 4 F 4th at 1353.  Although the plaintiff need not provide an element-

by-element analysis of the product, this does require some degree of specificity when identifying

the product.  Id. at 1352.  In Golden, for example, the Court of Appeals for the Federal Circuit

emphasized that claim charts were insufficient to support the specific identification required when

they only referenced products made by two non-parties, not the accused infringer.  2023 WL

6561044 at *2.  The Federal Circuit also noted that even if the claim charts adequately identified

the product, the complaint remained insufficient when it "did not adequately explain *how* those

products infringe[d] the asserted patent claims." Id. (emphasis original).  "[I]mplied references to

the alleged infringing devices" were not sufficient to adequately plead direct infringement.  Id.

     While this Complaint does not use claim charts, it suffers the same deficiencies as the

complaint in Golden.  The Complaint's allegations target all on-site GPAM generation.  (ECF No.

1 at ¶ 33.)  Although it names one brand, Solenis now asserts that the accused products are not

limited to this brand.  (ECF No. 1 at ¶¶ 22; ECF No. 32 at PageID 283.)  The Complaint then

recites exemplar claims from each Asserted Patents and alleges "on information and belief" that

the GPAM-generation processes performed by Buckman's equipment infringe these claims.  (ECF

No. 1 at ¶¶ 37-39, 48-50, 60-61, 70-71, 73, 85-87, 98-99, 108-109.)  These allegations are

conclusory statements, "legal conclusion[s] couched as…factual allegation[s]," which courts need

not accept as true.  Twombly, 550 U.S. at 555.

The Complaint contains only "implied references to the alleged infringing devices" and does not explain how these products infringed its asserted claims.  See Golden, 2023 WL 6561044 at *2.  The pleadings are not sufficiently specific.

ii.     *Exemption Based on Buckman's Secrecy*

The Complaint alleges that Buckman did not respond to Solenis' requests for information about its on-site GPAM generation activities.  (ECF No. 1 at ¶¶ 24-33; ECF No. 32 at PageID 286.)  Solenis warned Buckman that it otherwise could not verify whether infringement occurred "due to the nature of the relevant technology and how Buckman conducts its business[.]"   (ECF No. 1 at ¶ 29; ECF No. 32 at PageID 286.)  The Complaint emphasizes that without Buckman's cooperation, there is no analytical technique or means to conclusively confirm infringement of the Asserted Patents.  (ECF No. 1 at ¶¶ 31-32.)   The Complaint therefore asserts that this suit is necessary to obtain information about potential infringement that it could not otherwise obtain. (ECF No. 1 at ¶ 34.)

In Hoffman-La Roche Inc. v. Invamed Inc., as here, defendants did not respond to requests for information about their products to confirm whether they in fact infringed the patents, and plaintiffs did not know of any analytical technique to establish on their own whether defendants had used an invention claimed in one of the asserted patents.  213 F.3d 1359, 1361 (Fed. Cir. 2000).   The Court of Appeals for the Federal Circuit rejected the Hoffman-LaRoche defendants' argument that due to plaintiffs' inability to "obtain and set forth in their complaint facts showing infringement, they should not have filed suit at all."  Id. at 1364.  The Court of Appeals noted that defendants could have avoided litigation by just agreeing to reveal the process they used, under a confidentiality agreement.  Id.

Solenis cites <u>BioMérieux, S.A. v. Hologic, Inc.</u>, and <u>Sorensen v. Ampro Tools Corp.</u>, to argue that district courts have used <u>Hoffman-La Roche</u>'s logic to deny motions to dismiss when the plaintiffs could not obtain missing information without resorting to litigation.  (ECF No. 32 at PageID 287 (citing C.A. No. 18-21 (LPS), 2018 WL 4603267, at *4 (D. Del. Sept. 25, 2018); No. C 08-00096 CW, 2009 WL 605831, at *1, 4 (N.D. Cal. Mar. 9, 2009)).)  Solenis asserts that, even if its filings would generally be insufficient to survive a 12(b)(6) challenge, the specific pleading requirement should be attenuated by Buckman's failure to cooperate with Solenis' pre-litigation inquiries.  (ECF No. 32 at PageID 285-286.)

Buckman twice asked Solenis for additional information about the Asserted Patents so Buckman could review the infringement allegations itself.   (ECF No. 25 at PageID 137; ECF No. 25-3 at PageID 147; ECF No. 25-5 at PageID 152-3.)  Solenis argues that Buckman could have assessed infringement based on the language of the Asserted Patents alone, without Solenis' help.  (ECF No. 32 at PageID 288.)  Buckman could have interpreted the Asserted Patents on its own through the claims, specification, and prosecution history, all of which are public record.  (ECF No. 33 at PageID 289 (citing <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1319 (Fed. Cir. 2005)).)

Buckman argues in reply that <u>Hoffman-La Roche</u> is inapplicable because it predated <u>Twombly</u> and <u>Ashcroft</u> and concerned sanctions under Federal Rule of Civil Procedure 11, not a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 33 at PageID 305.)  Buckman argues that <u>BioMérieux</u> and <u>Sorensen</u> are distinguishable because the plaintiffs in those cases pled with specificity the names of the allegedly infringing products and how they infringed the asserted patent claims.   (ECF No. 33 at PageID 305-306.)  Buckman also argues that Solenis' pre-filing inquiries were insufficient to invoke any right to leniency it might otherwise have.  (<u>Id</u>. at PageID 306-7.)

Although <u>Hoffman-LaRoche</u> was decided under pre-Twombly/Iqbal pleading standards and concerned a Rule 11 motion, its assessment of reasonable pre-filing inquiry in cases where one party has exclusive access to information the other needs has been incorporated into judgments on motions to dismiss under modern pleading standards.  <u>BioMérieux,</u> 2018 WL 4603267, at *4; <u>Sorensen,</u> 2009 WL 605831, at *1, 4.  The Complaints in these cases provided information missing in the current action, including specific accused products and how they infringe an exemplary claim from the asserted patents.  <u>BioMérieux,</u> 2018 WL 4603267, at *4; <u>Sorensen,</u> 2009 WL 605831, at *1.  <u>BioMérieux,</u> however, held that when assessing sufficiency of the pleadings, plantiffs "cannot be charged with knowing…non-public information they could only obtain after filing suit and obtaining discovery."  2018 WL 4603267, at *4.  The sufficiency of pleadings therefore depends on what a plaintiff reasonably could have known at the time of filing, given the defendant's refusal to provide information upon request.

<u>Micro Motion, Inc. v. Kane Steel Co., Inc</u>., which considered whether a plaintiff could use discovery against a third-party to an ongoing action, is also instructive on the issues presented here.  894 F.2d 1318, 1319-20, 1327 (Fed. Cir. 1990).  There, the Court of Appeals for the Federal Circuit held that discovery is not warranted against either a defendant or nonparty based on a mere suspicion or allegation of infringement.  <u>Id</u>. at 1326-7.  It reasoned that a nonparty should receive the same protections from discovery as if the nonparty had been sued.  894 F.2d at 1327.  Were that the case, a "mere suspicion of infringement…based on an allegation alone" would not have been enough to permit discovery.  <u>Id</u>.

The Federal Circuit added that the point of discovery is to "assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." <u>Id</u>. (citing <u>Netto v. AMTRAK</u>, 863 F.2d 1210, 1216 (5th Cir.1989); <u>MacKnight v. Leonard Morse</u>

Hosp., 828 F.2d 48, 52 (1st Cir.1987); Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592

(5th Cir.1978); Hinton v. Entex, Inc., 93 F.R.D. 336, 337–38 (E.D.Tex.1981); Isaac v. Shell Oil

Co., 83 F.R.D. 428 (E.D.Mich.1979)).   The Federal Circuit directly compared FED. R. CIV. P.

26(g)'s requirement that a party "make a 'reasonable inquiry' before seeking discovery" to FED.

R. CIV. P. 11's standards for allegations in a complaint.  Micro Motion, 894 F.2d at 1327.

The Complaint states that Solenis seeks to use "the judicial process and the aid of discovery

to obtain…such information as is required to confirm its belief" as to Buckman's infringement.

(ECF No. 1 at ¶ 34.)   In other words, Solenis filed the Complaint to compel Buckman via discovery

to provide information that it did not provide in response to Solenis' letters.  Whether Buckman's

failure to provide such information justifies this action depends on whether Solenis' pre-filing

inquiry was reasonable in light of Buckman's responses.

Micro Motion demonstrates that discovery requires some showing that the underlying

claim may be viable, in the same way as a complaint must include sufficient factual allegations for

such a claim.  894 F.2d at 1327.  Because non-parties are entitled to the same protections as parties

sued for infringement, Buckman is entitled to understand the nature of the allegations against it

when asked to provide information about its operations.  Id.   Its pre-litigation correspondence

reflects an effort to determine the relevance of Solenis' requests, not a refusal to respond to them.

(ECF No. 25-3 at PageID 147; ECF No. 33 at PageID 306.)  Instead of providing this clarification,

Solenis refused and filed suit.

Solenis' argument that it did not need to answer Buckman's questions fails.  (ECF No. 32

at PageID 288-9.)  The Court of Appeals for the Federal Circuit stated in Phillips that patents serve

a public notice function and are interpreted in the context of its claims, specifications, and

prosecution history.  Phillips, 415 F.3d at 1319.  This holding, however, concluded the Court's

15

explanation of why intrinsic evidence takes priority over extrinsic evidence in claim construction. Id. at 1318-19.  Phillips concerned construction of claims after litigation had begun.  Id. at 1309-1310.  It did not address whether a potential infringer may ask about a patent's construction and scope before responding to pre-litigation discovery.

In any case, only now does Solenis explain why it did not need to clarify the scope of the Asserted Patents to Buckman.  It did not give Buckman this explanation in pre-litigation letters and emails, despite Buckman's willingness to provide relevant information once Solenis clarified the scope and goal of its inquiries.  This renders Solenis' pre-litigation efforts to identify infringing products insufficient.

Because Solenis did not meaningfully engage in pre-litigation efforts to identify infringing products, it cannot benefit from the reduced standard for specificity in pleadings recognized for parties who are met with obfuscation by their opponents.  Solenis cannot blame its inability to identify specific infringing products, or specific instances of infringing on-site GPAM generation, on Buckman's refusal to disclose information.  The pleadings are therefore insufficient as to any claims of direct infringement.

### iii.    Conclusion

Because Solenis failed to identify infringing products or explain the nature of their infringement with sufficient particularity, and it did not meaningfully engage in pre-litigation efforts to identify infringing products, the motion to dismiss is **GRANTED** as to all claims of direct infringement.

### C.    Indirect Infringement

The Complaint asserts that Buckman induced infringement of all three Asserted Patents by providing equipment for GPAM generation and encouraging third parties to use it in an infringing

manner.  (ECF No. 1 at ¶¶ 47-49, 84-86, 107-108.)  35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "[A]ctive inducement has three elements: knowledge of the patent; knowledge that the induced acts will infringe; and intent to bring about the desired result, which is infringement."  Memory Integrity, LLC v. Intel Corp., 144 F. Supp. 3d. 1185, 1193 (Fed. Cir. 2015) (internal quotations omitted).  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"  Lifetime Indus., Inc. v. Trim-Lok, Inc. 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

The Complaint also asserts that Buckman has contributorily infringed Claims 1 and 12 of the '343 Patent by providing and operating GPAM generating equipment at third-party facilities in an infringing manner.  (Id. at ¶¶ 69-71.)  35 U.S.C. § 271(c) holds liable as a contributory infringer "whoever offers to sell or sells within the United States or imports into the United States a component of" either a patented apparatus or a material or apparatus for use in practicing a patented process, "constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]"  35 U.S.C. § 271(c).  Here, the Complaint alleged that Buckman instructed third parties to combine Buckman's GPAM with cellulose fibers during the papermaking process, and to generally make paper and paperboard with the GPAM.  (ECF No. 1 at ¶ 76.)

    *i.*    *Underlying Direct Infringement*

In every direct infringement claim, the Complaint alleges "[o]n information and belief"

that Buckman directly infringed the Asserted Patents by operating "equipment" that performs infringing processes or yields infringing products.  (ECF No. 1 at ¶¶ 39, 61, 99).  The Complaint then "realleges and incorporates by reference" these allegations in the claims for indirect infringement.  (Id. at ¶¶ 46, 68, 83, 106.)

Buckman argues that Solenis failed to plead sufficient facts as to any indirect infringement because it did not identify any third-party infringer or its infringing product or process.  (ECF No. 25-1 at PageID 132.)  Buckman argues that Solenis cannot just copy the language of patent claims and flatly assert infringement thereof "on information and belief[.]"  (ECF No. 1 at ¶¶ 50, 72, 87, 109; ECF No. 25-1 at PageID 133 (quoting <u>DIFF Scale</u>, 2020 WL 2220031, at *2).)  Assuming it can, Buckman additionally argues that the Complaint does not allege that "any single entity ha[d] the requisite direction and control over the performance of steps" in each claim.  (ECF No. 25-1 at PageID 133-4.)

Solenis counters that it alleged direct infringement via on-site GPAM generation and the production of paper and paperboard with this GPAM. (ECF No. 32 at PageID 289-90; <u>see also</u> ECF No. 1 ¶¶ 50, 72, 87, 109.)  Solenis also argues that its May 13, 2022 letter identified one instance of underlying infringement by a third-party paper mill in Reading, PA.  (ECF No. 25-2; ECF No. 32 at PageID 290.)  Buckman responds that the letter accused it of infringing "one or more of the [four] Hercobond® Patents[,]" one of which is excluded from the current infringement claims. (ECF No. 25-2 at PageID 144; ECF No. 33 at PageID 310.)

It is axiomatic that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement."  <u>Bill of Lading</u>., 681 F.3d at 1333.  Despite this, a patentee need not specify who commits the underlying infringement.  Circumstantial evidence of direct infringement by unknown parties suffices to uphold a final judgment of indirect infringement.

18

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1318 (Fed. Cir. 2009).  The court in Bill of Lading reasoned that if indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer, the pleading standard for indirect infringement cannot require allegations thereof.  681 F.3d at 1336.  A plaintiff need only plead facts sufficient to allow an inference that at least one direct infringer exists.  Id.

The allegations Solenis cites in the Complaint restate the alleged conduct underlying the direct infringement claims.  (ECF No. 1 at ¶¶ 39, 60-61, 99.)  Because these pleadings were insufficient to establish direct infringement, they are likewise insufficient to establish the direct infringement predicates for indirect infringement.  See Bill of Lading, 681 F.3d at 1333.  In any case, Buckman's direct infringement cannot provide the necessary basis for indirect infringement.

If Buckman's customers are operating the equipment and infringing the Asserted Patents themselves, the Complaint does not identify these customers or what products they make.  (ECF No. 25-1 at PageID 133-4.)  Failure to identify Buckman's customers does not automatically exclude any direct infringement they may have committed from consideration.  The question is whether Solenis pled facts sufficient to allow an inference that at least one direct infringer exists. See Bill of Lading, 681 F.3d at 1336.

Solenis, however, fails to plead such facts.  As discussed above, it failed to sufficiently identify which of Buckman's on-site GPAM generation activities directly infringe the Asserted Patents.  See supra III.B.  Although its May 2022 letter references activities in Reading, PA, neither the letter nor the Complaint explain how this activity infringed the Asserted Patents.  (ECF No. 25-2; ECF No. 33 at PageID 308.)  No authority suggests that without sufficiently pleading what products and processes directly infringe, alleging that a defendant sells such nondescript products and processes to others pleads sufficient facts to render an inference of direct infringement

19

plausible.  Solenis does not plead any other form of direct infringement.

Solenis has failed to adequately plead the direct infringement underlying any indirect infringement claims.  Accordingly, Defendants' Motion to Dismiss Solenis' claims of indirect infringement is **GRANTED**.

### D.    Shotgun Pleading

FED. R. CIV. P. 8(a)(2) requires that a claim for relief include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  FED. R. CIV. P. 10(b) requires a pleading to state the party's "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  "[S]hotgun pleadings," those that fail to separate causes of action or "connect specific facts or events" with each one, are therefore prohibited.  Lee v. Ohio Education Ass'n, 951 F.3d 386, 392-393 (6th Cir. 2020) (citing Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1323 n.13 (11th Cir. 2015) (collecting cases); CincinnatiLife Ins. Co. v. Beyrer, 722 F.3d 939, 947 (7th Cir. 2013)).

Buckman argues that this Complaint constitutes improper shotgun pleading because while it pleads all its infringement claims against all three Defendants, it fails to allege sufficient facts to justify the allegations against any Defendant individually.  (ECF No. 25-1 at PageID 128; see ECF No. 1 at PageID 1, 7, 9, 12, 14, 17, 20, 22.)  Buckman asserts that Solenis therefore did not provide sufficient notice of the grounds for each claim against each Defendant.  (Id. at PageID 128.)

Solenis responds that Buckman has conceded that one of the Defendants is a holding company containing the other two, and that the three share the same address.  (ECF No. 30 at PageID 188; ECF No. 32 at PageID 277.)  Solenis argues that accordingly, Buckman itself is in the best position to identify which Defendant is responsible for each allegation because the division of responsibilities among entities is not public information.  (ECF No. 32 at PageID 278.)

Buckman's reply argues that Solenis cites no authority to show that relationships between Defendants are relevant to the sufficiency of pleadings.  (ECF No. 33 at PageID 305.)   Buckman further argues that the Sixth Circuit has held that indiscriminately grouping multiple defendants together constitutes impermissible shotgun pleading.  (ECF No. 33 at PageID 304 (citing Banks v. Bosch Rexroth Corp., 2014 WL 868118, at *7 (E.D. Ky. Mar. 5, 2014)).)

Because Solenis fails to state any claim, the Court need not reach this issue.

### E.      Enhanced Damages Under Section 284 for Willful Infringement

35 U.S.C. § 284 "gives district courts the discretion to award enhanced damages against those guilty of patent infringement." Halo Elecs., Inc. v. Pulse Elecs., Inc., 579 U.S. 93, 110 (2016).  "[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Buckman argues that Solenis' pleadings are insufficient to plead willful infringement.  (ECF Nos. 25-1 at PageID 140.)  Because all claims for infringement have been dismissed, no claim for willful infringement can survive.  See supra, III.C-D.

### F.      Leave to Amend

When FED. R. CIV. P. 15(a)(1) does not authorize amendments to pleadings as a matter of course, a party may only amend the pleadings with the opposing party's written consent or the court's leave.  FED. R. CIV. P. 15(a)(2).  The court should freely give leave when justice so requires. Id.

Solenis argues that if this Court grants the motion to dismiss this Complaint, as above, it should also grant Solenis leave to amend.  (ECF No. 32 at PageID 293 (citing Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)).)  Buckman in reply cites Sanders v. Truist Bank, where this district held that a request for leave to amend as part of an opposition to a motion to dismiss is not a motion for such leave.  2021 WL 4185889, at *4 (W.D. Tenn. Mar. 31, 2021); (ECF No. 33 at PageID

312.)  Buckman further argues that Solenis has not alleged any new facts it could plead in an amended Complaint.  (ECF No. 33 at PageID 312.)

"While Rule 15 is undoubtedly pro-amendment, a request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." Sanders v. Truist Bank, 2021 WL 4185889, at *4 (quoting La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010) (quoting Begala v. PNC Bank, Ohio, Nat'l Assn, 214 F.3d 776 (6th Cir. 2000))) (citing Bunn v. Navistar, Inc., 797 F. App'x 247, 257 (6th Cir. 2020); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 699 (6th Cir. 2004)).)  Absent a motion to amend the complaint predating the motion to dismiss and "identifying the proposed amendments [,] . . . [p]laintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." Id. (quoting Begala, 214 F.3d at 784).

The request for leave to amend is a single paragraph at the end of Solenis' Response in Opposition to the Motion to Dismiss, and it includes no proposed amendments to the Complaint. (ECF No. 32 at PageID 293.)  Accordingly, it is not a motion for leave to amend and is **DENIED.**

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss, **WITHOUT** leave to amend.

**IT IS SO ORDERED**, this 19th day of July, 2024.


 /s/ Jon P. McCalla
JON P. MCCALLA
UNITED STATES DISTRICT JUDGE